UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------- X

RESERVOIR MEDIA MANAGEMENT, INC.,

                                        Plaintiff,

                        -v -

CRAZE PRODUCTIONS, ET AL.,

                                        Defendants.

--------------------------------------------------------------- X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  9/28/2015
```

1:13-cv-1847-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

I.      INTRODUCTION

Reservoir Media Management, Inc. owns a share of the copyrights to the musical compositions of twenty-eight songs recorded by late R&B artist Aaliyah.  After a separate action in California state court involving a separate copyright holder found that defendants exploited the song recordings through iTunes and other online distribution without authorization, Reservoir brought the present suit for copyright infringement of the musical compositions.  Reservoir seeks summary judgment for its infringement claim, statutory damages for each of the twenty-eight copyrights infringed, and a finding that defendants' infringement was willful.  Because there are no disputes of material fact regarding defendants' liability, but the determination of statutory damages is a matter to be decided by the jury, Reservoir's motion for summary judgment is GRANTED in part and DENIED in part.

## I.   BACKGROUND

### a.   Facts[1]

Plaintiff Reservoir Media Management, Inc. ("Reservoir") is an independent music publishing company that owns an extensive catalogue of music.  On June 25, 2012, Reservoir acquired a share of the copyrights to the musical compositions of twenty-eight songs recorded by the late R&B artist Aaliyah.  Statement of Undisputed Facts ("SUF") at ¶¶ 1, 6, 11 . . . 136, Dkt. No. 66.  These songs are each from Aaliyah's albums "One in a Million" and "Aaliyah," and include popular late 90s and early 2000s hits such as "Are You That Somebody?" and "Try Again."  Reservoir acquired the composition rights through an assignment from Black Fountain Publishing, Inc. ("Black Fountain") and related entities, including Blackground Records, LLC ("Blackground").  Assignment of Copyright, Dkt. No. 52–2.  Blackground is also the owner of separate copyrights to the song recordings for the twenty-eight Aaliyah songs.

Each of the twenty-eight musical compositions was registered with the Copyright Office, and the Black Fountain/Reservoir assignment covering the compositions was recorded with the Copyright Office.  SUF at ¶¶ 1, 6, 11 . . . 136; *id.* at ¶¶ 2, 7, 12 . . . 137.  The assignment gave Reservoir a 50% interest in all ownership rights to the compositions, including "any and all causes of action for infringement of the Compositions, past, present, and future."  Assignment of Copyright.

Defendants Craze Productions ("Craze") and Hiphoplands, Ltd. ("Hiphoplands") are entities that digitally distribute music.  Defendant Sam Kleinman was a former co-owner and current consultant of Craze.  Kleinman Dep. 23:9–24:15, Dkt. No. 55–3.  Mr. Kleinman is also a shareholder and current director of Hiphoplands.  *Id.* at 65:8–65:18.  Defendants admit that they sold or distributed in the United States phonorecords containing the copyrighted musical compositions at issue without a license from plaintiff.  Defs.' Answers to First Reqs. Admis., Dkt.

---

[1] Unless otherwise specified, facts are taken from the parties' Local Rule 56.1 Statements of Undisputed Facts, Dkt. Nos. 50, 66, 68, and the evidence submitted in connection with this motion.

No. 55–1.  Defendants also admit that at least one of them generated approximately $294,384.10 in revenue from iTunes sales of Aaliyah songs containing the copyrighted compositions, as well as additional but unspecified revenue from internet streaming services Vevo and Youtube.  SUF at ¶¶ 142–43.  Thus, defendants do not contest that plaintiff owns valid copyrights to the twenty-eight musical compositions, or that defendants sold or distributed phonorecords containing the copyrighted compositions without a license from plaintiff.

The major area of disagreement between the parties concerns the significance of prior litigation between Hiphoplands and Blackground, one of the assignors listed in the Black Fountain/Reservoir assignment covering the musical compositions.  That dispute began in 2002, when Blackground entered into an agreement (hereinafter the "2002 Agreement") with a company called Unique Corp. Ltd. ("Unique").  The 2002 Agreement granted Unique licenses outside of North America to song recordings from Blackground's music catalog, including Aaliyah.  2002 Agreement at ¶ 2–4, Dkt. No. 55–6.  The licenses included the right to "market records via the internet and other such similar methods."  *Id.* at ¶ 2.  The 2002 Agreement did not grant Unique licenses to the musical compositions for any song, but rather provided that Blackground "shall acquire music publishing licenses in respect of all compositions release [sic] herein."  *Id.* at ¶ 11(iv).  In March 2007, Unique assigned its rights under the 2002 Agreement to Hiphoplands.  Assignment of Rights, Dkt No. 70.

In June 2007, Hiphoplands filed suit against Blackground in California state court, bringing state law claims for breach of contract and fraud.  Hiphoplands Complaint, *Hiphoplands, Ltd. v. Blackground Records, LLC*, Case No. BC372661, Superior Court of California, County of Los Angeles, Dkt. No. 55–10.  Hiphoplands's complaint alleged that Blackground "failed to deliver all recordings" for foreign distribution, as required by the 2002 Agreement.  *Id.* at ¶¶ 15, 17.  Specifically, Hiphoplands contended that Blackground misrepresented that artists Toni Braxton and Jojo were signed to another label, affecting Unique's (and therefore Hiphoplands's) rights to distribute

3

recordings by those artists.  *Id.* at ¶¶ 19–20, 23.  The complaint made no allegations regarding the rights to musical compositions for any artists' work.

Blackground filed a cross complaint against Hiphoplands and Unique on December 12, 2007, bringing state law claims for breach of contract and for an accounting.  Cross Complaint, Dkt. No. 70.  The Cross Complaint alleged that Hiphoplands and Unique failed to pay royalties for their use of Blackground's recordings, as required by the 2002 Agreement.  *Id.* at ¶¶ 6, 11.  The Cross Complaint also made no mention of musical composition rights for any artists' work.

A jury ruled in favor of Blackground and dismissed all claims brought by Hiphoplands.  On February 10, 2009, the court granted an interlocutory judgment in favor of Blackground with respect to its counterclaim for an accounting of royalties.  An accounting trial was held three years later, after Hiphoplands failed to provide an accounting to Blackground.  The state court awarded Blackground a judgment against Hiphoplands in the amount of $8,676,611.  Statement of Decision at 3, Dkt. No. 55–12.  Of particular relevance, the court found that "Hiphoplands['s] assignee, Craze Productions/Sam Kleinman, and its subdistributors had received $562,408 in license fees from Apple, Inc. in connection with the exploitation of Blackground's music."  The state court further found that: (1) the 2002 Agreement did not authorize Unique (and therefore Hiphoplands) to exploit digital downloads of Blackground's catalogue; (2) the 2002 Agreement expired in 2007, and therefore any rights Hiphoplands had under the Agreement expired at that time; and (3) Craze Productions/Sam Kleinman continued to receive royalty payments from iTunes for digital sales of Blackground's music through at least 2012, and no portion of this money was paid to Blackground.  *Id.* at 5.  As a result, the court ruled that "Hiphoplands must reimburse Blackground for all monies it, or its assignees, received from the unauthorized sale of digital downloads of Blackground's music."  *Id.*  The state court's decision is currently on appeal.

On March 23, 2013, Reservoir brought the present suit, alleging a single claim of copyright infringement pursuant to 17 U.S.C. §§ 501 *et seq.*  *See* Dkt. No. 1.  Defendants filed an answer and

counterclaims against Reservoir on June 13, 2013, alleging breach of contract and unjust enrichment. *See* Dkt No. 6.  The Court thereafter dismissed defendants' unjust enrichment claim at the motion to dismiss stage.  *See* Dkt. No. 23.  Defendants later voluntarily dismissed with prejudice their breach of contract claim—which they conceded was "essentially identical" to their claims brought in California state court—in response to plaintiff's motion for summary judgment (and plaintiff's threat of filing a motion for sanctions under Rule 11).  *See* Dkt. No. 77; SUF at ¶ 152.

Plaintiff seeks summary judgment in its favor with respect to its lone claim for copyright infringement.  Plaintiff further requests statutory damages for each of the twenty-eight copyrighted musical compositions infringed under 17 U.S.C. § 504(c)(1), and a ruling that defendants' infringement was willful under 17 U.S.C. § 504(c)(2).

## II.    LEGAL STANDARD

Plaintiff, the moving party, is entitled to summary judgment on a claim if it can "show[ ] that there is no genuine dispute as to any material fact and [it is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Factual disputes that are irrelevant or unnecessary will not be counted."  *Id.*

To defeat a motion for summary judgment, defendants "must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).  "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010) (internal quotation marks and citations omitted).  Defendants "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted).  The Court's job is not to "weigh the evidence or resolve issues of fact."  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir. 2002).  Rather, the Court must decide whether a rational juror could find in favor of the defendants.  *Id.*

## III.   ANALYSIS

### a.  Liability

To prevail on a motion for summary judgment for copyright infringement, plaintiff must establish that there is no disputed issue of material fact regarding the claim.  "A claim of copyright infringement under federal law 'requires proof that (1) the plaintiff had a valid copyright in the work allegedly infringed and (2) the defendant infringed the plaintiff's copyright' by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder.  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005) (quoting *Lipton v. Nature Co.,* 71 F.3d 464, 469 (2d Cir. 1995).

Defendants do not dispute the validity of plaintiff's ownership of the twenty-eight protected musical compositions at issue.  Nor do defendants dispute that they exercised rights in the musical compositions belonging to the copyright holder without plaintiff's authorization; defendants admit in their responses to plaintiff's requests for admission that "Defendants sold or distributed phonorecords" containing each of the twenty-eight musical compositions at issue, "without a license from Reservoir."[2]  Defs.' Answers to First Reqs. Admis., Dkt. No. 55–1

---

[2] Although defendants argue that there is no basis for holding Mr. Kleinman liable for infringement, irrespective of a finding of liability for Craze and Hiphoplands, defendants' admissions concede exploitation

Rather, defendants contend that a dispute of material fact exists because the California state court's judgment is on appeal, and their rights to the protected works have not been finally determined until that appeal is decided.  Indeed, defendants' opposition to plaintiff's motion and their supporting affidavits discuss in detail the merits of that case.  But the California state court action involved Hiphoplands's contractual rights to the sound recordings—not the musical compositions.  "Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights." *In re Cellco Partnership,* 663 F. Supp. 2d 363, 368–69 (S.D.N.Y. 2009) (internal quotation marks and citation omitted).  A musical composition "consists of rhythm, harmony, and melody" and a copyright "protects the generic sound that would necessarily result from any performance of the piece;" whereas a sound recording is the "aggregation of sounds captured in the recording." *Poindexter v. EMI Record Grp. Inc.*, No. 11 CIV. 559 (LTS), 2012 WL 1027639, at *2 n.3 (S.D.N.Y. Mar. 27, 2012) (internal quotation marks and citations omitted).  Indeed, the 2002 Agreement between Blackground and Unique expressly did *not* grant any rights to the musical compositions.  The dispute over the merits of the California state court's decision is not material to the question of defendants' liability because, even if the decision is overturned on appeal, the question of whether defendants exercised separate rights to the musical compositions belonging to plaintiff without authorization remains unaffected.

Defendants discuss at length several other facts that they contend preclude summary judgment.  None of the facts are material, and few are relevant.  For example, defendants note that at least some of the infringing acts took place prior to the assignment granting Reservoir ownership rights to the musical compositions.  Because Reservoir did not have any rights at the time of infringement, defendants argue, it cannot now bring a claim for the past infringement.  But, where an assignment of an exclusive right under a copyright expressly includes the right to prosecute

---

of the protected works by *all* defendants.  Defendants' admissions made pursuant to Rule 36 may serve as the factual predicate for summary judgment.  *See Donovan v. Carls Drug Co.*, 703 F.2d 650, 651 (2d Cir. 1983).

accrued claims for infringement, that right passes to the assignee.  *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) ("[A] copyright owner can assign its copyright but, if the accrued causes of action are not expressly included in the assignment, the assignee will not be able to prosecute them.").  The assignment from Blackground granted Reservoir rights to "any and all causes of action for infringement of the Compositions, past, present, and future."  Assignment of Copyright, Dkt. No. 52–2.  The date that the assignment granted Reservoir ownership rights is therefore neither material nor in dispute.

 Next, defendants argue that the extent of additional rights Reservoir received from Blackground, such as synchronization rights, are in dispute.  Similarly, defendants point to a dispute over the nature of contacts Reservoir had with Blackground regarding possible coordination efforts in both the current litigation and the California state court action.  None of this is material.  Regardless of whether Reservoir had rights *in addition* to those at issue, or whether Reservoir and Blackground coordinated trial strategy, neither calls into question:  (1) the validity of Reservoir's ownership of the registered copyrights to the musical compositions, or (2) defendants' infringement of plaintiff's exclusive rights to the compositions.

Because defendants fail to raise any material facts in dispute, plaintiff's motion for summary judgment is GRANTED with respect to defendants' liability for copyright infringement.

    **b.  Damages**

Plaintiff's motion for summary judgment also seeks statutory damages for each of the twenty-eight compositions that defendants infringed, and a finding that defendants' acts constitute willful infringement.  Generally, a copyright owner "is entitled to recover the actual damages he suffered and any profits made by the infringer."  *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1114 (2d Cir. 1986) (citing 17 U.S.C. § 504(b)).  But a copyright owner may instead elect to recover statutory damages under § 504(c), which "are available without proof of plaintiff's actual damages or proof of any damages."  *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 626

(S.D.N.Y. 2011) (internal quotation marks and citation omitted).  District courts "have broad discretion in setting the amount of statutory damages within the minimum and maximum amounts prescribed by the Copyright Act." *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 472 (S.D.N.Y. 2001).

Section 504(c)(1) provides that an infringer may be liable "in a sum of not less than $750 or more than $30,000 as the court considers just" for any work infringed.  17 U.S.C. § 504(c)(1).  If a court finds that the infringement was committed willfully, the court has discretion to increase the award of statutory damages up to $150,000.  17 U.S.C. § 504(c)(2).  Because twenty-eight separate copyrights were infringed, and because plaintiff alleges the infringement was committed willfully, plaintiff seeks statutory damages of up to $4,200,000.

The Court declines to award statutory damages at the summary judgement stage.  It is well established that the amount of a statutory damages award under § 504(c) is a determination for the jury.  *See Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 355 (1998) ("[T]he Seventh Amendment provides a right to a jury trial on all issues pertinent to an award of statutory damages under § 504(c) of the Copyright Act, including the amount itself.").  Thus, the Court may not determine an award of statutory damages as a matter of law, as invited to by plaintiff.  This is particularly true on this record, where there are outstanding questions regarding the availability and scope of any statutory damages—questions that the Court discusses below.

The parties failed to identify the following issues in their briefs, but there are factors that may ultimately limit or preclude an award of statutory damages at trial.  First, plaintiff contends that it is entitled to separate statutory damage awards for each of the twenty-eight protected musical compositions infringed.  But it is not clear from this record that each musical composition is a separate "work" for purposes of statutory damages.  Although each of the musical compositions has a separate copyright registration, "the number of copyright registrations is not determinative of the number of statutory damage awards." *ASA Music Prods. v. Thomsun Electronics*, No. 96 CIV 1872

(BDP)(MDF), 1998 WL 988195, at *8 (S.D.N.Y. Sept. 29, 1998) (Fox, M.J.); *see also Pavlica v. Behr*, No. 03 CIV. 9628 (DC), 2006 WL 1596763, at *3 (S.D.N.Y. June 12, 2006) (explaining that "related works have been held to be derivative works or part of a compilation even when they were separately copyrighted").  That is because "[t]he Copyright Act allows only one award of statutory damages for any 'work' infringed."  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 139 (2d Cir. 2010).

Section 504(c) provides:  "For purposes of this subsection, all the parts of a compilation or derivative work constitute one work."  17 U.S.C. § 504(c).  "An album falls within the [Copyright] Act's expansive definition of compilation."  *Bryant*, 603 F.3d at 140.  Thus, "infringement of an album should result in only one statutory damage award," and "[t]he fact that each song may have received a separate copyright is irrelevant to this analysis."  *Id.* at 141.  Rather, to determine whether statutory damages should be awarded on a per-song basis, courts focus on "whether the plaintiff—the copyright holder—issued its works separately, or together as a unit."  *Id.*  Thus, in *Bryant*, the Second Circuit affirmed a district court's decision to award a single statutory damages award for each album, rather than forty separate awards for each copyrighted song, because "the copyright holders . . . issued their works as 'compilations'; they chose to issue Albums."  *Id.*

Here, plaintiff seemingly concedes that all of the songs containing the copyrighted musical compositions were issued by the original copyright holder in two albums:  "The Compositions owned by Reservoir were all recorded by the late superstar artist Aaliyah on her double-platinum albums, 'One in a Million' and 'Aaliyah' . . . for Blackground Records."  Compl. at ¶ 11, Dkt. No. 1. Ultimately, "the question of whether a work constitutes a 'compilation' for purposes of statutory damages . . . is a mixed question of law and fact."  *Bryant*, 603 F.3d at 140.  While defendants failed to raise this issue in their opposition, neither did plaintiff present sufficient evidence to allow the Court to decide this issue on the record presented.  The parties will have the opportunity to establish whether the twenty-eight copyrighted compositions constitute twenty-eight separate "works" for purposes of statutory damages through *in limine* motions and at trial.

Second, it is also not clear that Reservoir may receive statutory damages for defendants' infringement of the copyrighted musical compositions when Blackground has already received the equivalent of actual damages for defendants' infringement of the copyrighted sound recordings for the same underlying "work" under the Copyright Act.

As noted above, § 504(c) mandates that all parts of a compilation or derivative work be considered one "work" for purposes of awarding statutory damages.  A derivative work is defined under § 101 to include "a work based upon one or more preexisting works, such as a . . . sound recording . . . ."  17 U.S.C. § 101; *see also* 6 William F. Patry, *Patry on Copyright* § 22:186 (explaining that "sound recordings are defined in section 101 as a species of derivative work of the underlying musical composition").  Thus, a sound recording and musical composition may constitute one "work" under § 504(c); the statute allows only one award of statutory damages for the infringement of any such "work."  *See Capitol Records, Inc. v. MP3Tunes, LLC*, 28 F. Supp. 3d 190, 192 (S.D.N.Y. 2014) (declining to award separate statutory damages for infringement of sound recording and musical composition of same underlying work despite separate copyright owners for each).[3]  The Court acknowledges that there is divided authority on this subject.  *See Teevee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 548 (S.D.N.Y. 2001) (allowing separate statutory damages awards for infringement of sound recording and musical composition of same underlying work where separate

---

[3] In reaching its decision, the court in *Capitol Records* found that defendants (and its users) "were solely interested in sound recordings and made no separate use of (and had no interest in) the musical composition."  28 F. Supp. 3d at 191.  In so doing, the court examined and found persuasive the decision of *Spooner v. EEN, Inc.,* No. 08 Civ. 262, 2010 WL 1930239 (D. Me. May 11, 2010), which stated that "courts have declared that 'separate copyrights are not distinct works unless they can live their own copyright life.'"  *Spooner*, 2010 WL 1930239, at *5 (quoting *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990)).  However, the Court does not believe this added distinction is necessary—the Second Circuit in *Bryant* expressly declined to apply an "independent economic value test" to determine whether separate statutory awards are appropriate under § 504(c).  *Bryant*, 603 F.3d at 142.  Rather, the Second Circuit explained that § 504(c) "provides no exception for part of a compilation that has independent economic value, and the Court will not create such an exception."  *Id.*  Because *Bryant*'s holding is equally applicable to derivative works as it is to compilations, the Court does not read the holding in *Capitol Records* as being limited to cases where an infringer has no separate interest in the musical composition apart from the sound recording.

copyrights owners for each).  The Court finds Judge Pauley's reasoning in *Capitol Records* persuasive, but the Court need not reach the question at this time for the reasons discussed below.

Blackground was awarded damages in California state court for defendants' unauthorized digital iTunes sales of the twenty-eight Aaliyah songs at issue, infringing Blackground's rights with respect to the sound recordings.  Although Blackground did not allege claims under the Copyright Act, the contract claims allowed it to receive "damages equivalent to the actual damages [it] could elect to receive under the Copyright Act."  *Sparaco v. Lawler, Matusky, Skelly Engineers LLP*, 313 F. Supp. 2d 247, 253 (S.D.N.Y. 2004).  Because Blackground recovered the equivalent of actual damages and profits under § 504(b), it may be that Blackground is precluded from also receiving statutory damages for defendants' infringement of the same "work" under § 504(c).  *See Sparaco*, 313 F. Supp. 2d at 253 (precluding plaintiff who settled contract claims and received equivalent to actual damages under Copyright Act from recovering statutory damages).

It is an open question whether a copyright holder's election to recover the equivalent of actual damages and profits, rather than statutory damages under the Copyright Act, also precludes a separate copyright holder from later pursuing statutory damages for infringement of the same "work."  The Court has not found any cases specifically addressing the issue. [4]  But there is a factual dispute that may obviate the need to answer that question:  whether Blackground also owned the

---

[4] The closest case arises in *Kamakazi Music Corp. v. Robbins Music Corp.*, where three separate individuals or entities owned copyright interests to the musical compositions of Barry Manilow.  534 F. Supp. 69 (S.D.N.Y. 1982).  All three brought claims for copyright infringement in district court and sought statutory damages, but the defendant successfully compelled arbitration against one of the copyright holders.  *Id.* at 73.  After the arbitrator awarded the copyright holder statutory damages, the defendant argued that the Copyright Act precluded the other two copyright holders from subsequently bringing their claims for statutory damages.  *Id.* The court disagreed, reasoning that although Congress intended to have all claims by affected copyright holders presented before one tribunal "to the extent possible," nothing in the Copyright Act precluded the other two copyright holders from also recovering statutory damages, so long as "the infringer's liability on these statutory damages does not exceed the maximum amount provided in Section 504(c) with the limitation that the minimum amount remains that specified in Section 504(c)."  *Id.* at 74–75.  At this time, the Court takes no view on the holding of this case, including whether this same reasoning would apply where the first copyright holder elected to receive actual damages and profits, rather than statutory damages.

copyrights to the musical compositions when it was awarded the equivalent of actual damages and profits for defendants' infringement of the sound recordings for the same "works."

Reservoir was assigned ownership rights to the musical compositions in June 2012, well after judgment was entered in Blackground's favor in the California state action. Reservoir steadfastly maintains that it was assigned these rights by Black Fountain, "not Blackground Records," which it calls "an entirely separate entity." Pl's. Br. Summ. J. at 4. However, the assignment expressly lists Blackground as an "assignor." Assignment of Copyright, Dkt. No. 52–2. As discussed above, if Blackground owned copyrights to both the sound recordings and musical compositions, it may be precluded from later seeking statutory damages under the Copyright Act for the same "work"— and a belated assignment would not ordinarily grant the assignee greater rights than the assignor enjoyed. *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258–59 (2d Cir. 2015) (noting that under common law principles "an assignee acquires no greater rights than his assignor") (internal quotation marks, citation, and ellipses omitted). Moreover, even if Black Fountain was the relevant assignor, defendants may attempt to prove at trial that Blackground and Black Fountain are so closely affiliated as to be considered one company for statutory damages purposes.

Because the amount of statutory damages is an issue to be decided by a jury, plaintiff's motion for summary judgment with respect to damages is DENIED.

## IV.    CONCLUSION

For the reasons outlined above, plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 48.

SO ORDERED.

Dated:  September 28, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge