H23ZZRESCMM

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   RESERVOIR MEDIA MANAGEMENT,
    INC.,
4
                    Plaintiff,
5
               v.                      13 Civ. 1847 (JLC)
6
    CRAZE PRODUCTIONS, HIPHOPLAND,
7   LTD, and SAM KLEINMAN,

8                                      Conference

9              Defendants.

10  ------------------------------x

11                                     New York, N.Y.
                                       February 3, 2017
12                                     11:00 a.m.

13  Before:

14                  HON. JAMES L. COTT,

15                                     Magistrate Judge

16                       APPEARANCES

17  LOEB & LOEB, LLP
         Attorneys for Plaintiffs
18  BY:  BARRY I. SLOTNICK
         CHENG L. CHEN
19
    JUDAH S. SHAPIRO
20       Attorney for Defendants

21  Also Present Via Telephone:  SAM KLEINMAN Pro Se

22

23

24

25
```

H23ZZRESCMM

1      (Case called)

2      THE COURT:  By my count there are three different

3  applications that are in front of me this morning, and

4  obviously, I'm new to the case, but I've reviewed the docket.

5  Let me tell you where I think we are, and then you can tell me

6  how you think we need to proceed.  I have Mr. Shapiro's motion

7  to withdraw, which has been on the docket for some time, and I

8  guess what I'm going to say is it's being renewed at this time

9  effectively, although it was never dropped per se, as I

10  understand it.  I'll come back to that in a minute.

11      Let me tell you the three things that I think we have

12  to deal with.  The first is the motion to withdraw.  The second

13  is Reservoir's application to hold the defendants in contempt,

14  and the third is Mr. Kleinman's, I'm going to characterize it

15  as a motion or application to set aside the settlement in some

16  way, which I think at least he seems to suggest in his February

17  2 letter to the Court.

18      Let me ask Mr. Shapiro, Mr. Slotnick and Ms. Chen,

19  have you all seen his February 2 letter to the Court?

20      MR. SLOTNICK:  Yes, your Honor.

21      MR. SHAPIRO:  Yes, your Honor.  I just want to note I

22  did receive exhibits, but the numbers were off.

23      THE COURT:  I think the same for the Court.

24      Let me start with the motion to withdraw, and this is

25  how I see it.

1          Mr. Shapiro, you made a motion to withdraw in advance

2     of the settlement conference before Judge Maas back in 2015.

3          MR. SHAPIRO:  Right.

4          THE COURT:  At that time Mr. Kleinman filed opposition

5     to the motion and said that he would be prejudiced by your

6     withdrawal at that time.

7          MR. SHAPIRO:  Right.

8          THE COURT:  I don't believe the plaintiff took a

9     position with respect to that application, and you ended up

10    participating in the settlement conference before Judge Maas

11    which resulted in a settlement.

12         MR. SHAPIRO:  Right.

13         THE COURT:  Mr. Kleinman, you participated in the

14    settlement conference, but you participated by phone -- for

15    medical reasons, you were not allowed to travel at that time --

16    at the conclusion of which there was a proceeding before Judge

17    Maas and a transcript made, which is at docket No. 1 16, which

18    I have reviewed.  At the conclusion of that proceeding,

19    essentially Judge Maas indicated to Mr. Shapiro that if there

20    was ever a need to have the motion formally adjudicated he

21    would do so and grant it, but given that the case had settled,

22    I think, although I don't know that he used this exact

23    phrasing, that he thought that the motion effectively had been

24    mooted by the fact that the case had been resolved.

25         It's clear to me from the record that Judge Maas would

1    have otherwise granted the motion, but he didn't, I assume,

2    because the parties negotiated and then filed a consent

3    judgment, and I think he probably assumed that would be the end

4    of all of this.

5           So far am I accurate, Mr. Shapiro?

6           MR. SHAPIRO:  That is accurate.

7           THE COURT:  Is there anything else I've missed up to

8    that point in time?

9           MR. SHAPIRO:  There is actually one little fact.

10   There wasn't a court reporter at that hearing.

11          THE COURT:  There wasn't a court reporter at the

12   hearing before Judge Maas?

13          MR. SHAPIRO:  Right.  There was some discussion before

14   we actually had the mediation, I believe.  The judge said, I

15   think, that I'm granting your motion, and I kind of volunteered

16   to act as attorney for the mediation for the defendants.

17          THE COURT:  There is nothing in the transcript that

18   I've seen that suggested that Judge Maas in fact granted the

19   motion.  You're saying he actually granted it?

20          MR. SHAPIRO:  I would say that's a little overstated;

21   I think what happened is essentially the same thing he said in

22   the transcript.  He had actually informed Mr. Kleinman that he

23   was going to grant my motion, and then the mediation took

24   place, and then we went on the record.  That was referred to

25   actually in the transcript.  He actually said, when he said I'm

clearly entitled to be relieved, when he says "I've already

told Mr. Kleinman I'm going to grant it," I think that actually

occurred, if I'm not mistaken.

THE COURT:  The language on page 6 of the transcript

says, "Clearly, you're entitled to be relieved.  If at some

point you want me to consider that motion, let me know that,

and I've already told Mr. Kleinman I'm going to grant it."

MR. SHAPIRO:  Correct.

THE COURT:  But that's not granting it.

MR. SHAPIRO:  Correct.

THE COURT:  I still think technically speaking the

motion was never granted.

MR. SHAPIRO:  I would believe technically you're

correct.

THE COURT:  There is no order on the docket from Judge

Maas granting the motion.

MR. SHAPIRO:  I agree with you.

THE COURT:  It is a motion that is pending before me,

and I'm going to rule on it today.  OK?

MR. SHAPIRO:  OK.

THE COURT:  Aside from that, what else do you want to

say?

MR. SHAPIRO:  I think that's it for right now.

THE COURT:  Mr. Slotnick, anything you want to say

about his application?  If I'm not mistaken, you took no

1    position with respect to it back in 2015, but you're now taking

2    the position, and you're opposing it because you're concerned

3    that if Mr. Shapiro goes off into the good night, you're going

4    to have a problem dealing with the defendants because they're

5    going to be unrepresented.

6              MR. SLOTNICK:  Exactly, your Honor.

7              THE COURT:  Make sure you speak into the microphone.

8              MR. SLOTNICK:  I'm sorry, your Honor.

9              THE COURT:  Mr.Kleinman, have you been able to hear

10   everybody so far?

11             MR. KLEINMAN:  Yes.  Thank you.

12             THE COURT:  OK.  Go ahead.

13             MR. SLOTNICK:  Our concern is on several levels, and I

14   believe we expressed this off the record to Judge Maas a little

15   bit more than a year ago, that the settlement had a number of

16   components.  In addition to the permanent injunction, it also

17   required a payment.  If the payment were made by the end of

18   2016, it was one number.  If there was no payment by the end of

19   2016, there would be a larger number.  Our concern then and our

20   concern now is if in fact the defendants violated the consent

21   judgment, and frankly at the time we thought the only potential

22   for violation was nonpayment, that we needed to have someone on

23   whom we could serve papers to know that we were not violating

24   any of the defendant's due process rights.  Frankly, I don't

25   think the thought ever occurred to us, or at least didn't occur

1    to me, that the issue would be the violation of the permanent

2    injunction as well as not paying on the judgment.

3            THE COURT:  Just to be clear, if I can interrupt, was

4    there no payment on the judgment?

5            MR. SLOTNICK:  There was no payment on the judgment.

6            THE COURT:  There are two violations you're alleging,

7    although you didn't allege the nonpayment in the letter to the

8    Court.  Correct?

9            MR. SLOTNICK:  Your Honor, I think that's right.  I

10   think, to be fair, the consent judgment to some degree

11   anticipated that if there was no early payment, or payment

12   before the end of 2016, then the new number would be the higher

13   number.  I guess technically that would not constitute an

14   aspect of contempt.  However, now we have a situation in which,

15   by Mr. Kleinman's most recent submission to the Court, there

16   seem to be new issues that have arisen which would lead us to

17   believe that, A, we're entitled to have the Court reconsider

18   what the judgment number should be as part of the sanctions

19   motion.

20           THE COURT:  To be clear, the consent judgment itself

21   by its terms does not discuss the monetary component of the

22   settlement, correct?

23           MR. SLOTNICK:  I think that's correct.

24           THE COURT:  That was done, as I understand it,

25   confidentially in the first instance, if I understood the

1    transcript before Judge Maas, with the understanding that if it

2    ever came to enforcement, then it would no longer remain

3    confidential as far as the monetary terms were concerned.

4            MR. SLOTNICK:  That's correct, your Honor.

5            THE COURT:  OK, but let's keep our eye on the ball for

6    the moment.  I appreciate what you've said, but I want to deal

7    first with Mr. Shapiro's motion to withdraw.  You're opposing

8    it.  The basis for your opposition is because you're concerned

9    that Mr. Kleinman and the corporate defendants will go

10   unrepresented and it will make it harder to enforce the consent

11   judgment and your settlement agreement, even though Mr. Shapiro

12   himself has no particular role in that at this point in that,

13   as I understand it, Mr. Kleinman now has affirmatively said to

14   the Court in his submission -- and I will confirm it with

15   him -- that he doesn't even want Mr. Shapiro to represent him,

16   so even if you wanted that to be in the case, you don't get to

17   decide who represents Mr. Kleinman.

18           MR. SLOTNICK:  That's for certain.  However, there are

19   two corporate defendants which, at least with respect to one,

20   Mr. Kleinman is attempting to disassociate himself.  Mr.

21   Kleinman presumably can appear pro se.  The two corporate

22   entities cannot.  If he has authority for those two corporate

23   defendants, we should know that, and if he doesn't have

24   authority, then he has no authority to engage or disengage

25   Mr. Shapiro.  I don't think Mr. Kleinman can have it in all

1    ways.

2              THE COURT:  Mr. Kleinman, first of all, I gather I'm

3    correct, am I not, that you do not want Mr. Shapiro to be

4    representing the interest of the defendants in this case going

5    forward?  Is that correct?

6              MR. KLEINMAN:  Yeah.  I thought all along that the

7    judgment --

8              THE COURT:  Mr. Kleinman, we're having a hard time

9    hearing you, and I have a court reporter.  Please speak very

10   slowly and speak a little away from the receiver so that we can

11   hear you better.

12             MR. KLEINMAN:  I'm sorry, your Honor.  I am sick.  I

13   am very sick.  I am very, very sorry.

14             What I'm saying is I thought all along that Judge Maas

15   fired Mr. Shapiro at the time.

16             THE COURT:  All right.  Let me interrupt you.  Judges

17   don't fire lawyers.  I know you're a layperson, but we don't

18   fire lawyers.  Lawyers make applications to judges to see if

19   they are permitted to withdraw from representation in certain

20   circumstances.  In this case Mr. Shapiro made a motion to

21   withdraw because you and the corporate defendants hadn't paid

22   him.  That is typically a basis on which motions to withdraw

23   are granted, but Judge Maas never entered a formal order

24   granting the motion, and that's why this is still a live issue.

25             Now you may proceed.

1          MR. KLEINMAN:  In any event, I fired him because I

2     told him that if the judge made this ruling, or at least

3     expressed that he was going to grant the motion, then I assume

4     that he is no longer in the picture, and actually, the only

5     reason Judge Maas convinced me to try to do something inside

6     these agreements is because he said that if Mr. Shapiro is no

7     longer my lawyer, I have to get new lawyers for the

8     corporation, and because I didn't have any money to get any new

9     lawyers, I agreed.  So in my mind he actually granted this

10     motion in the sense that he made me go and make this deal with

11     these people.

12          THE COURT:  First of all, just to be clear, it doesn't

13     appear to me -- and we'll come back to this in a few minutes --

14     that you were forced to enter into a deal.  I've read the

15     transcript, and Judge Maas specifically asked you personally on

16     the record whether you agreed to the terms, and in fact, you

17     were engaged on the record in discussing what the specific

18     terms were with Judge Maas, so I don't think there was any

19     force used here or threats of any kind by anyone to force you

20     to settle this case, and you well understood what the terms

21     were and you affirmed that you accepted those terms on the

22     record.

23          MR. KLEINMAN:  OK.  Am I allowed to speak?

24          THE COURT:  Yes.  Go ahead.

25          MR. KLEINMAN:  OK.  The judge told me there's two

1      options here.  One is that he is going to grant the motion, and

2      that, and then if he grants the motion I have to hire new

3      lawyers.  So basically I had no money to hire new lawyers.  So

4      whatever these people said they want from me, I agreed because

5      the judge said that if I don't get new lawyers I will have

6      these people.  So either way, there was no way for me to get

7      out of it.  There was no way for me to do anything about it,

8      because the judge said very specifically I'm going to grant the

9      motion.

10              THE COURT:  Let me be clear, Mr. Kleinman.  There are

11     three scenarios that could take place in a lawsuit.  One is

12     you're represented by counsel, you litigate a case, and you

13     lose, and therefore, judgment is entered against you.

14              The second is you negotiate, either represented by

15     counsel or at least in your individual capacity on your own,

16     and you agree to a settlement, and that's called a consent

17     judgment, which is what was entered here.

18              The third scenario is you and/or the corporate

19     defendants don't have a lawyer or no longer have a lawyer, no

20     longer put up a fight, and then a plaintiff gets what's called

21     a default judgment.  There's either a contested judgment, a

22     consent judgment, or a default judgment.  Any one of those

23     three could have happened in this case.  You opted to settle

24     your case, and therefore, there was a consent judgment entered.

25     OK?  Those are the realities that exist in February of 2017.

H23ZZRESCMM

1   We can't go back and revise or revisit the history of the case.

2   It is what it is.

3        We have a few things that we have to deal with today.

4   The first issue -- and I'm not going to spend more time on

5   it -- is whether Mr. Shapiro's motion to withdraw can be

6   granted.  You think he isn't your lawyer to begin with.

7   Mr. Shapiro represented back in 2015 that he hasn't been paid

8   and he still hasn't been paid, and notwithstanding the fact

9   that the plaintiff objects to my discharging Mr. Shapiro

10  because they believe that it is going to make it harder for

11  them to enforce the judgment in the case, those objections are

12  overruled, and I am formally granting Mr. Shapiro's motion to

13  withdraw.  I will put a written order on the docket to that

14  effect so there is absolutely no confusion in that regard.

15       Let me just state for the record that the reason for

16  the withdrawal here is that there's been a nonpayment, and it

17  is well established in case law that nonpayment of legal fees

18  is a valid basis for granting a motion to withdraw pursuant to

19  the local rules of this court, local rule 1.4 in particular.

20  That is my ruling.

21       Let me just make clear for the record, Mr. Shapiro,

22  although I believe, if I've read this correctly, that in

23  paragraph 37 of your affidavit in support of the motion, you've

24  indicated that you were not asserting any kind of a charging

25  lien.  Is that correct?

H23ZZRESCMM

1          MR. SHAPIRO:  Correct.

2          THE COURT:  And am I right, just to be completely

3     comprehensive here, not only a charging lien but also not a

4     retaining lien; no liens of any kind?

5          MR. SHAPIRO:  I am not asserting any liens.  I am not

6     waiving my right to collect eventually, but I am not asserting

7     any kind of liens in this case.

8          THE COURT:  With that in mind, Mr. Shapiro's motion is

9     granted.

10          That now means, Mr. Kleinman, you as a named defendant

11     can proceed in the lawsuit without a lawyer, but the corporate

12     defendants may not as a matter of law proceed in this lawsuit

13     without a lawyer.  If you're telling me you don't have money to

14     retain a lawyer to represent you and the corporate defendants,

15     that's your position and I can't make you retain a lawyer.  You

16     should understand that at least as far as the corporate

17     defendants are concerned, they must have a lawyer in all

18     further proceedings in this case, and there may well be further

19     proceedings in this case because the plaintiff has made an

20     application for contempt.  Let's go to that issue next.

21          Mr. Shapiro, if you wouldn't mind, even though you've

22     been formally discharged, if I could prevail upon you to remain

23     at least for the duration of the conference, there may be

24     historical information you are privy to, and since I'm

25     brand-new to the case, it would be helpful to me.

H23ZZRESCMM

| | |
|---|---|
| 1 | MR. SHAPIRO:  Sure, your Honor.  I'd be happy to, your |
| 2 | Honor. |
| 3 | THE COURT:  We have an application by letter to hold |
| 4 | the defendants in contempt.  As I understand it, the allegation |
| 5 | is that the defendant Craze has been distributing sound |
| 6 | recordings embodying the compositions that were identified in |
| 7 | the consent judgment and that they have been distributed in the |
| 8 | United States in violation of the consent judgment. |
| 9 | Am I right so far, Mr. Slotnick? |
| 10 | MR. SLOTNICK:  Yes, your Honor. |
| 11 | THE COURT:  And you want me to hold all of the named |
| 12 | defendants, I gather -- |
| 13 | MR. SLOTNICK:  Yes, your Honor. |
| 14 | THE COURT:  -- in contempt for violating the terms of |
| 15 | the consent judgment.  Is that correct? |
| 16 | MR. SLOTNICK:  Correct. |
| 17 | THE COURT:  All right.  And you want a monetary |
| 18 | sanction of some kind because you believe this is a willful |
| 19 | infringement and a violation of the consent judgment. |
| 20 | MR. SLOTNICK:  Correct. |
| 21 | THE COURT:  You have not filed a memorandum of law |
| 22 | correct? |
| 23 | MR. SLOTNICK:  That's correct. |
| 24 | THE COURT:  You have not filed any affidavits in |
| 25 | support of this? |

1          MR. SLOTNICK:  That's correct.

2          THE COURT:  You are thinking that the Court can impose

3     sanctions and award contempt on the basis of a one-and-a-half

4     page, single-spaced letter and an attachment of a picture

5     taken, presumably off of someone's phone, of an iTunes page

6     without having it authenticated in any way, and you think that

7     is a sufficient basis for the Court to render the draconian

8     relief you are seeking in this case?

9          MR. SLOTNICK:  No, your Honor.  We believe that a

10    full-fledged motion should be submitted to your Honor with

11    declarations with a memorandum of law.  We don't believe, and

12    were not expecting the Court to rule on this today.  We knew

13    that there was going to be a conference.  We anticipated one

14    based upon Mr. Shapiro's application.  We thought it best to

15    have everything put in front of your Honor at one time.  We

16    certainly don't believe it's appropriate for the Court to

17    consider this without substantiation.

18         We've been in contact with Apple for its iTunes

19    services.  We anticipate receiving additional documentation

20    from Apple, although what we already have is confirmed that,

21    according to their records, they were authorized by defendant

22    Craze to put the current album up for sale.

23         THE COURT:  When you say the current album, can you

24    educate me what you mean by that?

25         MR. SLOTNICK:  Yes.  The original album that was sued

1    on was an Aaliyah album.  The current album, I haven't seen all

2    the tracks, but it's a reconfiguration.  It uses some of the

3    same songs, some other songs, but certainly songs that were

4    part of this litigation in addition to other songs that are

5    also owned by Reservoir, which were not part of the original

6    litigation.

7            THE COURT:  If they weren't part of the original

8    litigation --

9            MR. SLOTNICK:  We're not seeking sanctions with

10   respect to anything that was not part of the original lawsuit.

11   We're seeking them only with respect to those compositions that

12   are part of this current litigation.

13           THE COURT:  You have read what Mr. Kleinman says about

14   all of this in his letter?

15           MR. SLOTNICK:  I have.

16           THE COURT:  Have you talked to him about any of this?

17           MR. SLOTNICK:  I have not spoken to Mr. Kleinman.  We

18   didn't receive this until middle of the afternoon yesterday.

19           THE COURT:  Here's what we're going to do on this.

20   I'm going to deny the application to the extent it was made as

21   a formal application, but I'm denying it without prejudice

22   because I think the record was not sufficiently developed.  If

23   you want to make a formal motion for contempt, you can do so.

24   I'm not going to set a schedule; you can make it when you want

25   to make it, if you want to make it.  I would also require that

H23ZZRESCMM

1    before you make it you have what I will characterize as a

2    meet-and-confer with Mr. Kleinman, who at least at the moment

3    is proceeding pro se and may well not have a lawyer

4    representing him, and you may or may not be convinced by what

5    he tells you that is in his letter or otherwise.

6         Mr. Kleinman, if you have any information or documents

7    and the like that you are able to share with Mr. Slotnick and

8    Ms. Chen, I would strongly encourage you to do that because it

9    may potentially obviate the need for a contempt application to

10   be made, and I assume all other things being equal, you would

11   prefer not to have a contempt application made in federal

12   court.  Correct?

13         MR. KLEINMAN:  That's correct.

14         THE COURT:  All right.  I think for today's purposes,

15   all I need to do is what I have just said in that regard.  But

16   obviously, Mr. Slotnick, you are free to make a motion for

17   contempt on a more developed record whenever you think that's

18   appropriate.

19         MR. SLOTNICK:  Thank you, your Honor.

20         One request, though.  We do not believe we have

21   suitable contact information for Mr. Kleinman or for the

22   defendants for that matter, and I think to be fair to the

23   corporate defendants, we should have some ability to reach out

24   to them.  We have addresses in the settlement agreement, just

25   street addresses.  We don't have email addresses or contact

H23ZZRESCMM

1   information with respect to people.  We don't have telephone

2   numbers.  Presumably at a meet-and-confer, I would like to

3   include the representatives of the corporate defendants as

4   well, and I would like, if possible, Mr. Kleinman to provide us

5   with full contact information for himself, for Craze, and for

6   HipHopLand so that we can try to have a meaningful

7   meet-and-confer as opposed to just sending emails in the hopes

8   that at some point somebody responds.

9           THE COURT:  Mr. Kleinman, what are the best ways for

10  Mr. Slotnick and Ms. Chen to have further contact with you, as

11  well as Craze and HipHopLand?

12          MR. KLEINMAN:  They have my email.  I don't know what

13  is the story.

14          THE COURT:  Can you state that email address for the

15  record?

16          MR. KLEINMAN:  It's samkl@me.com.

17          THE COURT:  Is there any email address at either Craze

18  or HipHopLand that you can provide in addition to your own

19  individual email address?

20          MR. KLEINMAN:  I will give it them.  They have it as

21  well.

22          THE COURT:  Are there any other individuals at either

23  HipHopLand or Craze that should be included in any telephone

24  conference that Mr. Slotnick and Ms. Chen would like to have

25  with you and any of your colleagues?  Who else should be

H23ZZRESCMM

1    included in that?

2         MR. KLEINMAN:  Technically speaking, the United

3    Kingdom government is the contact register, they should be the

4    ones that he should contact.

5         THE COURT:  The United Kingdom government?  I didn't

6    understand that.  What do you mean?

7         MR. KLEINMAN:  Yeah, well, the United Kingdom

8    government has filed that from a certain point, anything of

9    importance should be addressed to them.

10        THE COURT:  What is the relationship between Craze

11   Productions and HipHopLand to the United Kingdom government?

12   I'm not understanding that.

13        MR. KLEINMAN:  Because both of them are English

14   corporations, and they are not United States corporations.

15        THE COURT:  But they're private corporations, are they

16   not?

17        MR. KLEINMAN:  They are, but the United Kingdom

18   government, for whatever reason, filed last year in 2016, a

19   notice of contempt, it's called, which is available on the

20   Internet.  Basically for any issues of this type, he has to

21   contact them.  That's according to the notice they filed.

22        THE COURT:  All right.  You're saying things that are

23   well above my pay grade.  I don't really understand any of

24   this, but I'm going to leave this to Mr. Slotnick and Ms. Chen.

25        You have Mr. Kleinman's email address.  Do you need

1    his address as well?  Do you have that?

2              MR. SLOTNICK:  The last address that we had for Mr.

3    Kleinman was, I believe, Great Russell Street in the U.K.  Is

4    that still correct?

5              MR. KLEINMAN:  I will provide a new address in another

6    country when I talk to Mr. Slotnick next week.

7              THE COURT:  No.  I would like you to provide it now,

8    actually, because the Court may need to have it as well, since

9    if you're proceeding pro se, in addition to Mr. Slotnick having

10   a way to reach you, the Court may, because while we were

11   permissive in allowing you to email certain things to the

12   Court, that is generally not the way things are litigated in

13   this Court.  Usually things are litigated electronically.  We

14   will put on the docket your February 2 letter for purposes of

15   including it in the record, but generally speaking, we need to

16   be able to mail things to you, not just send things to you by

17   email.  If you could please state your current address for the

18   record so that the Court has it as well the plaintiff has it.

19             MR. KLEINMAN:  I would appreciate it, I will give it

20   as well now, but I have the option to change it next week

21   because the other address is actually more correct.  I just

22   want to make certain it's OK.  I wasn't prepared for this

23   question.

24             THE COURT:  You're not prepared to tell the Court what

25   your street address is?

1          MR. KLEINMAN:  No.  I am prepared.  There is no

2     problem.  I'm just saying if there is another address, I will

3     provide it to the Court next week.  The address that was 10

4     Great Russell Street, London, for me, just for me, that's a

5     correct address.

6          THE COURT:  Mr. Slotnick, do you have addresses for

7     Craze Productions and HipHopLand?

8          MR. SLOTNICK:  We have addresses that were in the

9     settlement agreement a little bit more than a year ago.  If

10     those are still accurate, then those are still accurate.

11          THE COURT:  Why don't you assume they are until you

12     find out they're not, and if they're not and you need relief in

13     some respect, you'll tell me, although technically speaking

14     they're not represented by anyone right now, and they're going

15     to be in default if they aren't represented by counsel.

16          Mr. Kleinman, just to be clear, in our court there is

17     a requirement that any corporate entity must have a lawyer; it

18     cannot proceed without a lawyer, so to the extent there are

19     going to be further proceedings in the court -- and there may

20     be or there may not be, I don't know -- but to the extent there

21     are going to be, you can represent yourself if you choose to,

22     but Craze and HipHopLand cannot represent themselves, so you

23     would need to get a lawyer to represent them if there are

24     further legal proceedings.  Otherwise, they would be considered

25     to be in default.  Do you understand?

 1          MR. KLEINMAN:  I understand, but I have written to the

 2     Court the whole story with Craze Productions.  For practical

 3     purposes, I'm not even authorized to appoint a lawyer for them,

 4     so I have explained that to the Court.

 5          THE COURT:  I have read the letter.  Perhaps now we

 6     will move on to that last issue that I identified, which is it

 7     seems to me what you have tried to do as best you can as a

 8     layperson, beginning on the third page of your letter where you

 9     talk about the judgment should be deemed null and void, and you

10     then you talk about not being authorized to sign the settlement

11     or the confession of judgment for a whole bunch of reasons,

12     none of this came up during the course of the proceeding before

13     Judge Maas, I feel confident in saying.  There is nothing in

14     the transcript of the November 10 proceeding before Judge Maas

15     to suggest that.  In fact, as I reviewed that transcript, Judge

16     Maas noted that you were on the telephone and then he went

17     through the terms of the settlement agreement, and you

18     participated in that discussion yourself.  In fact, I would say

19     you participated in the discussion of the terms, frankly, more

20     than Mr. Shapiro did.  At the conclusion of the proceeding

21     before Judge Maas, he said to you, "Those terms are acceptable

22     to you, Mr. Kleinman?"  And you said yes.

23          What ended up happening after that is the

24     representative of Reservoir and Mr. Slotnick and Mr. Shapiro

25     were all present, and they all signed a consent order of

H23ZZRESCMM

1    discontinuance, but since you were not physically present, Mr.

2    Kleinman, what Judge Maas said is, "Mr. Kleinman obviously is

3    not here to sign that; and counsel, I assume, will within 30,

4    days finalize the paperwork and submit a proposed judgment to

5    Judge Woods."  The parties then consented to the case being

6    before Judge Maas for all purposes, so it wasn't in the end

7    submitted to Judge Woods.  It was submitted to Judge Maas.

8    Judge Maas then signed the consent judgment, and the consent

9    judgment was signed by Mr. Slotnick on behalf of the plaintiff

10   and Mr. Shapiro on behalf of the defendants.  That was done

11   back in January of last year.

12           The way I read what you are saying is that you want to

13   set aside this settlement agreement and the consent judgment.

14   The rule, I think, that applies here is Rule 60(b) of the

15   Federal Rules of Civil Procedure.  The rules allow a court to

16   relieve a party or its legal representative from a judgment or

17   order or a proceeding on a number of grounds, including

18   mistake, inadvertence, fraud, misrepresentation, or misconduct.

19   I don't know that you have really articulated any of those

20   grounds in particular, but it strikes me that in any event

21   you're seeking to set aside the consent judgment.  On the basis

22   of what I have reviewed, I'll say the following:

23           It's not as a threshold matter clear whether state law

24   or federal law would apply when we are deciding the question of

25   whether a settlement agreement in these circumstances should be

1   vacated.   The Second Circuit Court of Appeals has explicitly

2   held whether state contract law as opposed to federal common

3   law applies to agreements settling federal claims, but the

4   circuit has often observed that with respect to fundamental

5   contract principles there is no material difference between New

6   York law and federal law.   In most circumstances, as I know --

7   and I've had this issue in the past -- the court has looked to

8   state law.   I'm going to look to New York State law here and a

9   settlement agreement under New York State law is interpreted

10  according to general principles of contract law, and settlement

11  agreements are strongly favored by New York courts and may not

12  be lightly cast aside.   It is well settled that a settlement

13  agreement is presumptively binding and conclusive.   When a

14  party makes a deliberate, strategic choice to settle, a court

15  cannot relieve him of that choice simply because his assessment

16  of the consequences was incorrect.   I'm quoting from a case

17  called *Powell v. Omnicom*, 497 F.3d 124, (2d Cir. 2007).

18  "Parties may enter into a binding agreement orally and the

19  intention to commit an agreement to writing standing alone will

20  not prevent contract formation.   Even if the agreement is never

21  reduced to writing, it is enforceable, as long as it was

22  voluntary, clear, explicit and unqualified when entered on the

23  record in open court."

24          In these circumstances it seems to me that the oral

25  agreement was entered on the record in a voluntary, clear,

H23ZZRESCMM

1    explicit and unqualified way.  The parties not only entered

2    into that agreement orally, but then they did in fact commit it

3    to writing in the form of the consent judgment.  In order to

4    overcome, therefore, the presumption of the enforceability and

5    to set aside a settlement agreement under New York law, someone

6    in the shoes of Mr. Kleinman would bear the burden of

7    establishing that there was a unilateral mistake, coupled with

8    some kind of concealment by the knowing party or a mutual

9    mistake, but nothing in the submission Mr. Kleinman has made to

10   the Court has demonstrated either fraud or mutual mistake or

11   inadvertence or anything else for that matter.

12          Without anything further and notwithstanding his

13   representation now that there may be some other people who

14   should have been involved to represent the interest of Craze

15   and/or HipHopLand, to the extent Mr. Kleinman is making an

16   application to the Court to vacate the settlement, it is

17   denied.

18          MR. KLEINMAN:  Am I allowed to say anything?

19          THE COURT:  You may respond, but I have ruled.  I'm

20   happy to have you make a further submission and a more formal

21   application, but on the basis of what you submitted and my

22   review of the record, I don't think there's a sufficient basis.

23   You cannot say a year after a settlement has been entered into,

24   Actually, wait a minute, I didn't have authority.  There is no

25   basis for you to do that in this case, as I understand the

H23ZZRESCMM

```
1    facts of the case.  You should have said that at the time of

2    the settlement conference.  You should have said that at the

3    time the consent judgment was entered into.  There is nothing

4    in the record to suggest that Mr. Shapiro did not have

5    authority to sign the consent judgment, and that is reposed in

6    him based on the proceedings that took place before Judge Maas

7    and that were memorialized in the transcript of November 10,

8    2015.

9            Go right ahead, Mr. Kleinman.

10           MR. KLEINMAN:  We're dealing with an English

11   corporation, and in England a corporation have their own

12   situation and you can represent them.  I was not aware that the

13   director, who was not me, for Craze Productions also owned or

14   took somehow the stock of the company.  Therefore, I had

15   basically, aside from being director, I had nothing, no

16   authority whatsoever to sign anything by English law -- if

17   necessary, I can bring you a certified opinion from English

18   lawyer from England, because this is what we are talking about,

19   about the corporation from England.  I did not know that he

20   took the stock.  It was buried inside hundreds of pages of the

21   corporation.  He took it against my wishes.  I didn't have a

22   clue about it.  So whatever I signed, by English law, and I'm

23   prepared to bring an opinion, there is no obligation for Craze

24   Productions because it was like a guy on the street signing it.

25   I was not allowed, by English law, to sign anything for Craze
```

1    Productions.  Actually, I was not even allowed to hire

2    Mr. Shapiro in 2013 because in 2013, before the lawsuit reached

3    us, there was a new director, and apparently he sold -- I don't

4    know what he did -- he took the stock.  From that moment on, by

5    English law, and I'm prepared to bring a certified opinion from

6    England, I had no business to hire Mr. Shapiro.

7              THE COURT:  Why are you raising this in 2017?  I don't

8    understand why you're now raising this for the first time, and

9    by the way, you only raised it because you were responding to

10   other letters.  You didn't even affirmatively make any

11   application to the Court.  You're only including this because

12   you are otherwise responding to the application for contempt.

13   I'm quite baffled, frankly, by everything you're saying because

14   if this were the case, I don't understand why you wouldn't have

15   said to Mr. Shapiro back in 2013, I'm hiring you just for me,

16   if you had no authority.  Otherwise, how could he possibly know

17   that you didn't have the authority?  Why would you not have

18   figured this out for yourself back at the time these companies

19   were sued four years ago?

20             MR. KLEINMAN:  OK.  First of all, we're not discussing

21   HipHopLand.  We're only discussing Craze Productions.  I am not

22   contesting anything about HipHopLand.  OK?

23             No. 2, as I said, an owner of a company can sign for

24   the company, or a director of the company -- in England.  This

25   is an English corporation.  I was not aware that he took the

1    one stock that the company has.  I only found out sometime ago

2    when I went through hundreds of pages of the corporation --

3    it's all online, by the way.  And that's when I discovered only

4    one petition that he says he has the stock.  That's why I

5    didn't make anything of that all of this time.  For all

6    practical purposes, my signature for Craze Productions is

7    useless by English law.  I do not, I cannot represent Craze

8    Productions at all to sign these agreements.  I'm not even

9    allowed to hire a lawyer.  I can bring an opinion to that

10   effect.

11          THE COURT:  Mr. Kleinman, let me interrupt you.  The

12   only thing for today is to the extent you're trying to vacate

13   the consent judgment and the settlement agreement, I'm denying

14   it.  I'm denying it without prejudice.  If you want to hire a

15   lawyer to represent Craze Productions, or if someone else

16   should be hiring a lawyer to represent Craze Productions

17   because you do not have authority, then you can so advise them

18   of this proceeding.  If Mr. Slotnick does choose to initiate a

19   contempt proceeding and he does choose to initiate it against

20   all three defendants, then you in your individual capacity are

21   legally authorized to respond to it.  The two corporate

22   entities are not.  Whether you are or are not authorized to

23   represent Craze's interest, you will not have any standing to

24   object to a contempt if it is sought against Craze.  Only a

25   lawyer could represent its interest.  If you're not the one to

1    make those arrangements, then you will have to tell whoever it

2    is to make those arrangements on penalty of potential default

3    and/or contempt, depending on whether the application gets

4    made.

5            I can't predict the future and Mr. Slotnick's client

6    may decide that it's chasing rainbows to pursue a contempt

7    proceeding here.  I don't know.  Sometimes there is value to

8    initiating certain proceedings; sometimes it is a colossal

9    waste of time.  The only thing that will happen is

10   Mr. Slotnick's clients will have to pay Mr. Slotnick, and they

11   may wish not to do that.  They will have to make a judgment

12   down the road.  In the short term, however, I do think it is in

13   your interest, and anyone else from Craze that you choose to

14   enlist, to have a conference call with Mr. Slotnick in the next

15   week or two to try to sort all of this out, because from my

16   reading of your letter, it sounds to me your position is there

17   is an innocent explanation as to how this may have found its

18   way onto the iTunes website, and if Mr. Slotnick and his client

19   are satisfied with that, that may be the end of it, at least as

20   far as that's concerned.

21           For my purposes, all I can do is rule on applications

22   made to the Court.  To the extent you are proceeding pro se,

23   and I am liberally construing your letter as a motion to vacate

24   the settlement agreement, as I said earlier, it's denied.  It's

25   denied without prejudice to the extent you want to make a

H23ZZRESCMM

1    renewed application in particular on the basis of Craze

2    Productions.  Am I clear?

3              MR. KLEINMAN:  Yes.

4              THE COURT:  Is there anything else we need to address

5    at the conference today?

6              MR. SLOTNICK:  Your Honor, we submitted, I believe a

7    week or so ago, a confession of judgment to the Court.  That

8    just needs to be addressed at some point.  I don't think that's

9    before your Honor today.

10             THE COURT:  I have never seen it and I'm not sure that

11   is something that I administer.  I think that's something that

12   is dealt with in the clerk's office.  I would direct you there

13   in the first instance.

14             MR. SLOTNICK:  Yes, we had sent it to the clerk's

15   office, but I guess we will hear about that in due course from

16   the clerk's office.

17             THE COURT:  I would talk to the orders and judgments

18   clerk in the clerk of court's Office.

19             MR. SLOTNICK:  Thank you, your Honor.

20             THE COURT:  Anything else?

21             MR. SLOTNICK:  No, your Honor.

22             THE COURT:  Mr. Shapiro, anything else?

23             MR. SHAPIRO:  No, your Honor.

24             THE COURT:  Mr. Kleinman, anything else?

25             MR. KLEINMAN:  No.
               THE COURT:  Have a good weekend everyone.  (Adjourned)